NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RYAN WILLIAM BENTZ, et al.,
*Plaintiffs/Appellants*,

*v.*

IQ DATA INTERNATIONAL INC., et al.,
*Defendants/Appellees*.

No. 1 CA-CV 25-0824

FILED 07-23-2026

Appeal from the Superior Court in Maricopa County
No. CV2025-019157
The Honorable Michael J. Herrod, Judge

**REVERSED AND REMANDED**

COUNSEL

Ryan William Bentz, Phoenix
*Plaintiff/Appellant*

Joseph Antonio Ayala, Phoenix
*Plaintiff/Appellant*

Gordon Rees Scully Mansukhani, LLP, Phoenix
By Solomon S. Krotzer
*Co-Counsel for Defendants/Appellees*

Zona Law Group P.C., Scottsdale
By Mark B. Zinman
*Co-Counsel for Defendants/Appellees*

_____

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Andrew J. Becke and Judge James B. Morse Jr. joined.

_____

**T H U M M A**, Judge:

¶1            Plaintiffs Ryan William Bentz and Joseph Antonio Ayala (Plaintiffs) appeal from a judgment finding they agreed to a binding settlement agreement with defendants IQ Data International, Inc., Brixton Warehouse TIC LLC, Brixton Mountain West Warehouse TIC LLC, Brixton MDPV Warehouse TIC LLC and Mark-Taylor Residential, Inc. (collectively Defendants). For the reasons that follow, the judgment is reversed and this matter is remanded for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2            Until August 2024, Plaintiffs lived in a Phoenix apartment owned by some of the Defendants. After leaving, some Defendants invoiced Plaintiffs for $1,049.65, which included utility fees and carpet repair. When Plaintiffs did not pay, the debt apparently was assigned to another Defendant for debt collection purposes. In May 2025, Plaintiffs filed this case, claiming violations of state and federal law relating to debt collection and credit reporting and sought damages that appear to be less than $25,000.

¶3            The parties sought to settle the dispute. On July 8, 2025, one of the Defendants filed a notice of settlement, stating "all parties have reached a settlement in principle" and they anticipated finalizing settlement documents in the next 30 days. That same day, Plaintiffs filed a notice stating that the parties had not settled.

¶4            On July 25, 2025, Defendants filed a motion to enforce a settlement agreement, also seeking fees and costs. The motion argued a "binding agreement was created on July 3, 2025" and attached various correspondence from before, during, and after July 3, 2025. Exhibit 1 included the following email exchanges from July 3, 2025.

- **7:51 a.m. email from defense counsel to Plaintiff Bentz:** Defendants "have agreed to offer $1,000, a waiver of the collection of the debt, and to stop collecting the debt at issue. Please advise whether you

are agreeable to these terms and we will send a settlement agreement."

- **11:53 a.m. email from Plaintiff Bentz to defense counsel, apparently responding to the 7:51 a.m. email in what the motion to described as a counteroffer:** "After careful consideration, . . . I must respectfully decline the offer as presented," adding "I am willing to consider resolution under revised terms that include monetary compensation in the amount of $3,500, a complete waiver of the alleged debt, immediate cessation of all collection activity, and written confirmation that any derogatory credit reporting related to this matter will be removed or corrected with all major credit bureaus and consumer reporting agencies within twenty-one (21) days. I would also require a mutual agreement to dismiss the action with prejudice, with no further claims to be brought by either party. If your clients are amenable to discussing a variation of these terms, I remain open to continued dialogue prior to proceeding with further litigation. I remain available today to review a draft settlement agreement and execute it should we reach mutually agreeable terms."

- **11:52 a.m. email from defense counsel to Plaintiff Bentz, apparently responding to the 11:53 a.m. email:** "If you would like to settle this matter ahead of the holiday weekend, we can provide $2,500 in monetary compensation. Per the below email, this will include waiver of the alleged debt, and the parties will stop collection of the debt. Let me know if you are agreeable and we will send over a settlement agreement."

- **12:29 p.m. email from defense counsel to Plaintiff Bentz:** "Please confirm that we are settling this matter for the $2,500 in monetary compensation below. If so, Defendants will begin drafting the settlement agreement and provide the draft next week."

- **2:16 p.m. email from Plaintiff Bentz to defense counsel:** "Please kindly send over the draft settlement agreement for my review and comments."

- **2:55 p.m. email from Plaintiff Bentz to defense counsel:** "I confirm that I am agreeable to settling this matter for $2,500 in monetary compensation, subject to review and approval of the full settlement agreement." The email added that, "[f]or clarity, the agreement should also include the following [five specified] provisions."

Concluding, "[p]lease proceed with drafting, and I look forward to reviewing the agreement next week."

**¶5**          A July 8, 2025 7:50 p.m. email from Plaintiff Bentz to defense counsel states, "[t]o clarify once again, Plaintiffs have not received, reviewed, or approved any proposed settlement agreement. As previously stated, any resolution remains expressly subject to written review and formal approval, which has not occurred." A July 8, 2025 8:33 p.m. response from defense counsel to Plaintiff Bentz states, "[o]ur client was out for the holiday weekend. As we have previously stated, we will circulate a settlement agreement, which will be similar to the sample agreement we sent last week, as soon as we receive it."[1]

**¶6**          Defendants' motion to enforce settlement agreement claimed the binding settlement agreement was reflected in the July 3, 2025, 2:55 p.m. email, where Plaintiff Bentz states he was "agreeable to settling this matter for $2,500 in monetary compensation." Plaintiffs' opposition noted that the sentence in the 2:55 p.m. email quoted by Defendants concluded with the express condition to any resolution "subject to review and approval of the full settlement agreement."

**¶7**          After oral argument, the court found that "the email chain between the parties did create a binding settlement agreement and Plaintiff[s] did not have the right to revoke the agreement." The court added that, "if the proposed written wet ink agreement had differed materially, Plaintiff[s] would have been able to either seek to correct those items with Defendants or could have sought to enforce the agreement with the Court in the same manner that [Defendants] are doing." The court denied Plaintiffs' motion to reconsider.

**¶8**          The court later entered a judgment awarding Defendants' $10,000 in fees (reflecting a reduction of a $2,500 settlement payment it found Defendants owed Plaintiffs) and $408.82 in costs. This court has jurisdiction over Plaintiffs timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1) (2026).[2]

---

[1] The record provided does not appear to include such a "sample agreement."

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## DISCUSSION

**I.    The Superior Court Properly Considered the Exchanges in Determining Whether the Parties Reached a Binding Settlement Agreement.**

**¶9**          Plaintiffs argue Arizona Rule of Evidence 408 prohibited the superior court from considering the settlement exchanges in determining whether the parties reached a binding settlement agreement. It is true that, subject to exceptions, evidence of "furnishing, promising, or offering -- or accepting, promising to accept, or offering to accept -- a valuable consideration in compromising or attempting to compromise" is inadmissible to, among other things, "prove or disprove the validity or amount of a disputed claim." Ariz. R. Evid. 408(a)(1). Such evidence, however, is admissible "for another purpose." Ariz. R. Evid. 408(b). "Although Rule 408 disallows evidence of settlement negotiations offered to prove a claim, nothing in the rule bars such evidence offered to prove a settlement resolving a claim." *Murray v. Murray*, 239 Ariz. 174, 178 ¶ 16 (App. 2016) (citation omitted). Accordingly, the superior court properly considered the email exchanges in determining whether the parties reached a binding settlement agreement. *Id.*

**II.    The Record Does Not Show that the Parties Reached an Enforceable Settlement Agreement.**

**¶10**          "Settlement agreements, which Arizona law favors, are governed by common-law contract principles. An enforceable contract requires an offer, acceptance, consideration, and sufficient specification of terms. Acceptance occurs when one manifests agreement to the terms of an offer in a way the offer requests or requires." *State Farm Mut. Auto. Ins. Co. v. Frank*, 257 Ariz. 255, 261 ¶ 21 (App. 2024) (citations omitted). "To create mutual consent and therefore a contract" under Arizona's common law, "acceptance of the offer must be unequivocal." *Richards v. Simpson*, 111 Ariz. 415, 417 (1975) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 94 Ariz. 391, 400 (1963)); *accord In re Kindall & Leinbach*, 2 CA-CV 2024-0147-FC, 2025 WL 673921, at * 2 ¶ 8 (Ariz. App. Mar. 3, 2025) (mem. decision) (citing *Clark*). A decision addressing the validity and enforceability of a contract presents a mixed question of law and fact and is reviewed de novo. *Armiros v. Rohr*, 243 Ariz. 600, 605 ¶ 16 (App. 2018).

**¶11**          Along with Arizona common law requirements, by court rule, no purported settlement agreement "is binding [] unless . . . it is in writing." Ariz. R. Civ. P. 80(a). This rule-based statute of frauds applies here. *See Robertson v. Alling*, 237 Ariz. 345, 348 ¶13 (2015) (agreeing that the

requirements of what is now Rule 80(a) serves to "prevent disputes as to the existence and terms of agreements and to relieve the court of the necessity of determining such disputes") (citing cases).

**¶12**        Applying these principles, the record provided to this court does not show that the parties reached a settlement agreement. Plaintiffs "did not accept unconditionally" Defendants' offer. And even if Plaintiff Bentz' emails showed progress toward a settlement between him and Defendants, Plaintiff Ayala did not author any of the emails involved in the settlement negotiations to satisfy Rule 80(a) as to him. On July 3, 2025, Plaintiff Bentz wrote that he was "agreeable to settling this matter for $2,500 in monetary compensation, subject to review and approval of the full settlement agreement." This same message asked defense counsel to "proceed with drafting, and I look forward to reviewing the agreement next week." The record does not show that Plaintiff Bentz reviewed and approved a written settlement agreement, which his email contemplated would be provided in the future and was a condition to any agreement.

**¶13**        Nor does the authority Defendants cite on appeal show that a contract was formed. This court in *AROK Constr. Co. v. Indian Constr. Servs.*, cited by Defendants, found that "the evidence is sufficient to raise a triable issue of whether a contract exists." 174 Ariz. 291, 295 (App. 1993). *AROK* does not support the conclusion that Plaintiffs agreed to a settlement agreement as a matter of law. Nor did *AROK* apply Rule 80, the rule-based statute of frauds precluding "a triable issue" of whether a settlement agreement exits.

**¶14**        Defendants have not claimed Plaintiffs partially performed the purported settlement agreement. The lack of partial performance here, and the application of Rule 80, distinguishes *Schade v. Diethrich*, cited by Defendants. In that case, the superior court held a bench trial and concluded, based on the evidence presented, that the parties "had made an enforceable contract and partially performed it." 158 Ariz. 1, 6 (1988). Similarly, this is not the case where an attorney extended an offer, albeit without client authority, that was unequivocally accepted by the other side and the terms of which were not disputed. *See Robertson*, 237 Ariz. at 348 ¶ 15 ("Because the parties do not dispute the existence or terms of the February 8 settlement, Rule 80[] does not preclude its enforcement."). Nor did Plaintiffs ever write, "[w]e accept," but then followed that acceptance with a statement that the accepting party "would like to withdraw [from] the agreement," distinguishing Defendants' reliance on the unpublished, nonbinding decision in *Nesbitt v. City of Bullhead City*, CV-18-08354-PCT-DJH, 2020 WL 6262396, at *2 (D. Ariz. Oct. 23, 2020).

¶15 Plaintiff Ayala had no apparent involvement in the settlement email messages, and Plaintiff Bentz stated he was "agreeable" to settle the matter "*subject to review and approval* of the full settlement agreement." Neither Plaintiff unequivocally accepted Defendants' settlement offer. *See Richards*, 111 Ariz. at 417-18. Accordingly, the order is reversed and vacated for further proceedings.

## III.    Attorneys' Fees and Costs.

¶16 Having vacated the order concluding there was a binding settlement agreement, Defendants are no longer the successful party. *See* A.R.S. §§ 12-341, -341.01(A). Accordingly, the award of fees and costs to Defendants is vacated. For these same reasons, and because Plaintiffs are not represented by counsel, their request for fees on appeal is denied. Similarly, given the judgment is reversed, Defendants' requests for fees and costs as a sanction under A.R.S. § 12-349 is denied. Plaintiffs are awarded their taxable costs incurred on appeal, contingent upon their compliance with ARCAP 21.

## CONCLUSION

¶17 The judgment is reversed and this matter is remanded for further proceedings.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR